IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TYRONE WELCH                                                                                          PLAINTIFF

v.                              Civil No. 12-5135

DETECTIVE WILLIAMS                                                                         DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Tyrone Welch brings this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.* Plaintiff contends Defendant wrongfully arrested him and made false accusations against him.

The case is before me on a motion for summary judgment (Docs. 31-33) filed by the Defendant. Plaintiff responded (Doc. 35) to the motion.[1] The summary judgment motion is ready for decision.

### I. Background

According to a report prepared by Fayetteville Police Department Corporal Mark Laird, on May 30, 2012, at approximately 5:35 p.m., he was dispatched to the area near Fairlane and Curtis in response to 911 calls of gunshots being fired. *Defendant's Exhibit* (hereinafter *Deft's Ex.*) C; *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) 21. Corporal Laird interviewed several witnesses who reported that five or six shots were fired from a blue Cadillac. *Deft's Ex.* C. The witnesses identified the two people in the Cadillac as Plaintiff and Allen Stevens. *Deft's Ex.* C.

---

[1] In his response (Doc. 35), Plaintiff refers to information contained on exhibits he submitted in response to Defendants' motion to dismiss. The Court will consider these exhibits (Doc. 23) in connection with this summary judgment motion.

-1-

In his report, Detective Williams noted that an individual who was scheduled to be a witness against Plaintiff in a June 12th trial lived in this area. *Deft's Ex.* A. In his supplemental report, Detective Williams summarized the statements of a number of witnesses, including four who reported having observed Plaintiff shooting from the Cadillac. *Plff's Ex.* 19; *Deft's Ex.* A.

The evidence submission form indicates that five 9 mm shell casings were recovered. *Plff's Ex.* 6. Additionally, Corporal Fields noted in his report that a bullet hole was found on the south side of a home on Huntsville. *Plff's Ex.* 13. The bullet went through the bed and into a dresser. *Id*. The bullet was not recovered. *Id*.

According to Detective Williams' supplemental report, when Stevens was interviewed, he stated that a man in a gold passenger car had tried to drive them off the road and then fired at them. *Plff's Ex.* 8. Detective Williams noted that a bullet hole was found in the trunk and a fired bullet was found inside the car. *Id.* Detective Williams stated that the bullet matched a bullet found in a home just north of Curtis Avenue on the north side of Huntsville Road. *Id.* It also matched a bullet found imbedded in a telephone pole. *Id.* In Detective Williams' opinion, all three bullets "would likely have been fired from a shooter facing north on Curtis." *Id.*

In both his affidavit and his preliminary report to the prosecutor's office, Detective Williams stated that during the investigation, the officers learned there had been a report that Plaintiff and Stevens had assaulted two men at a convenience store at the corner of Curtis and Fifteenth Street shortly before the shots were fired. *Deft's Exs.* A & B ; *Plff's Ex.* 21. Corporal S. Mauk interviewed the two men identified as brothers Cornelius Cox and Jeremy Cox . *Deft's Ex.* B. According to Corporal Mauk's report, the Cox brothers believed that Plaintiff and Stevens had guns. *Id.*

Surveillance video from the store has been submitted as *Defendant's Exhibit* D. This shows a vehicle, identified by Detective Williams as a Chrysler 300, parked at a gas pump at the convenience store. *Deft's Ex.* A & D. The car is parked at a vertical angle from the store with the front of the car the farthest away from the camera. *Deft's Ex.* D. One man is outside the car pumping gas while another is in the driver's seat of the vehicle. *Id.*

A blue vehicle, identified by Detective Williams as a Cadillac, is seen approaching from the left. *Deft's Exs.* A & D. The Cadillac parks horizontally in front of the Chrysler. *Deft's Ex.* D. It is difficult to judge the distance between the two vehicles from the video but it appears that the Chrysler would have been unable to drive forward and leave the gas station. *Id.* However, the back of the Chrysler was not blocked. *Id.*

Two men, identified by Detective Williams as Plaintiff and Allen Stevens, got out of the vehicle and approached the Chrysler. *Deft's Exs.* A & D. Plaintiff was wearing a white t-shirt, tan pants, tennis shoes, and a black hat. *Deft's Ex.* A. Stevens is wearing a white shirt and shorts. *Id.*

Plaintiff and Stevens are walking towards the Cox brothers quickly and in a very purposeful and forceful manner. *Deft's Ex.* D. Plaintiff and Stevens are gesturing and reach towards their waist or right hip area as if reaching for a weapon. *Id.* The Cox brothers run away from Plaintiff and Stevens. *Id.*

Plaintiff then appears to be getting into the Chrysler. *Deft's Ex.* D. The Cox brothers reported to Corporal Mauk that Stevens told Plaintiff to take the vehicle. *Deft's Ex.* B. Cornelius Cox reported that he told Plaintiff that he was stupid trying to take the car with all the surveillance cameras. *Id.* At that point, Plaintiff got out of the vehicle. *Id.*

-3-

According to Corporal Mauk's report, Cornelius Cox stated that the animosity between the men stemmed from a shooting that involved friends and family on both sides. *Deft's Ex.* B. Jeremy Cox reported to Corporal Mauk that he was able to calm Plaintiff down. *Id.* The video shows Plaintiff and Jeremy Cox briefly embracing. *Deft's Ex.* D. Jeremy Cox reported that Plaintiff told him to "tell your kinfolk not to show up in court." *Deft's Ex.* B. In his report, Detective Williams noted that at that time, Plaintiff had an upcoming criminal trial on charges of firing a gun and injuring a man in his front yard. *Deft's Ex.* A.

Detective Williams requested that a warrant be issued for Plaintiff and Stevens for unlawful discharge of a firearm from a vehicle, criminal conspiracy, intimidating a witness, and aggravated assault. *Deft's Ex.* A; *Plff's Ex.* 21. Plaintiff was on bond at that time and Detective Williams also requested revocation of Plaintiff's bond. *Plff's Ex.* 21.

Plaintiff maintains he was falsely accused of intimidating a witness, aggravated assault, discharging a firearm from a vehicle, and conspiracy. He maintains he was falsely imprisoned and unlawfully charged with violations of various state criminal statutes.[2] He points out that all charges were eventually dropped.

## II. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

---

[2] Malicious prosecution and slander claims were dismissed by order entered on February 20, 2013.

AO72A (Rev. 8/82)

P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Defendant maintains he is entitled to summary judgment in his favor because probable cause existed to arrest Plaintiff for the various offenses.  Defendant maintains the existence of probable cause negates any false arrest or false imprisonment claims.  He also maintains he did not violate a clearly established statutory or constitutional right of the Plaintiff and he is therefore entitled to the protection of qualified immunity.

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." Flynn v. Brown, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and citations omitted).  "[D]etermining if probable cause exists is not an exact science," Brodnicki v. City of Omaha, 73 F.3d 1261, 1265 (8th Cir. 1996), however, viewing the facts as a whole at the time of Plaintiff's arrest, I believe a prudent person would have been justified in believing

-5-

Plaintiff had committed the offenses of: unlawful discharge of a firearm from a vehicle, Ark. Code Ann. § 5-74-107(b)(1);[3] intimidating a witness in violation of Ark. Code Ann. § 5-53-109;[4] and aggravated assault in violation of Ark. Code Ann. § 5-13-204.[5]

When Defendant requested an arrest warrant, he had the reports prepared by Mauk and Laird; summaries of witness interviews positively identifying the Plaintiff as the shooter; and the video of the incident at the convenience store. There is no evidence of a Fourth Amendment violation. Sheets v. Butera, 389 F.3d 772, 778 (8th Cir. 2004); see also Anderson v. Larson, 327 F.3d 762, 770 (8th Cir. 2003)(A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest); Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001)("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. Since the record adequately supports the conclusion that the police officers had probable cause to arrest Kurtz for tampering, plaintiffs' allegations of false arrest fail to establish a civil rights violation.").

Alternatively, Defendant maintains he is entitled to the protection afforded to him by qualified immunity. I agree. Even if we assume probable cause did not exist, Defendant is entitled to qualified immunity. "[A]n officer is entitled to qualified immunity if there is at least arguable probable cause. . . . Arguable probable cause exists even where an officer mistakenly

---

[3] "A person commits unlawful discharge of a firearm from a vehicle in the second degree if he or she recklessly discharges a firearm from a vehicle in a manner that creates a substantial risk of physical injury to another person or property damage to a home, residence, or other occupiable structure."

[4] "A person commits the offense of intimidating a witness if he or she threatens a witness or a person he or she believes may be called as a witness with the purpose of: (1) Influencing the testimony of that person; (2) Inducing that person to avoid legal process summoning that person to testify; or (3) Inducing that person to absent himself or herself from an official proceeding to which that person has been legally summoned."

[5] "A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely: (1) Engages in conduct that creates a substantial danger of death or serious physical injury to another person."

AO72A (Rev. 8/82)

arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011). Given the facts set forth above as known by the Defendant after the investigation, there was clearly arguable probable cause to arrest Plaintiff.

### IV. Conclusion

Accordingly, I recommend that the Defendant's motion for summary judgment (Docs. 31-33) be granted and the case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of July 2014.

/s/ *Erin L. Setser*
   HON. ERIN L. SETSER
   UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)